# Stocker, Appellant, *v.* Schneider.

*Judgment—Opening judgment—Fraud—Variance between bond and contract—Evidence.*

1. A judgment entered on a judgment bond being properly opened a judgment on a verdict for defendant on the trial of a resulting issue will be affirmed, where the evidence in both proceedings tends to show that the plaintiff agreed in writing to sell to the defendant a brewery plant and assign certain leases on licensed houses, and execute a new lease after the termination of the existing leases for the term of ten years; that the judgment bond given in pursuance of the contract varied from the latter in the fact that it provided for semiannual payment of interest instead of an annual payment, and provided for payment of principal in one year instead of ten years; that the defendant was induced to sign the bond by false representations of the counsel who had prepared it, who was acting for both parties; that plaintiff had refused to assign the leases or execute a new lease for ten years; and that the contract was an entire one inasmuch as the leases were to be used in connection with the brewery business.

2. In such a case it is proper for the jury to take into consideration the value of the leases and deduct such amount from the amount of the original judgment.

*Evidence—Expert evidence—Liquor law—Breweries.*

3. It is not improper for a trial court to permit witnesses who are experienced in the manufacture and sale of beer to estimate the value of the control of licensed properties as adjuncts or auxiliaries to a brewery plant.

Argued March 1, 1910. Appeal, No. 26, Jan. T., 1910, by plaintiff, from judgment of C. P. Berks Co., Nov. T., 1907, No. 1, on verdict for plaintiff in case of Katharine B. Stocker v. August Schneider. Before Fell, C. J., Brown, Mestrezat, Potter and Stewart, JJ. Affirmed.

Rule to open judgment.

Issue to determine amount due on judgment. Before Endlich, P. J.

The facts are stated in the opinion of the Supreme Court.

The record showed the following verdict and judgment:

October 12, 1908, verdict finding: 1. As to the first issue that the amount owing as principal to plaintiff from defendant is $57,084. 2. As to second issue that the debt is payable in ten years from the date of the bond and mortgage. 3. As to the third issue that interest thereon is payable annually.

January 3, 1910, judgment entered on verdict finding: 1. As to the first issue that the amount owing as principal to plaintiff from defendant is $57,084. 2. As to second issue that the debt is payable in ten years from the date of the bond and mortgage. 3. As to the third issue that interest thereon is payable annually.

January 3, 1910, "And now, to wit: January 3, 1910, this cause came on to be heard at this term and was argued by counsel and upon consideration thereof it is ordered, adjudged and decreed as follows, viz.: that the verdict of the jury be approved and that the amount owing on the bond and warrant and mortgage dated April 6, 1907, given by the defendant to the plaintiff is $57,084, payable in ten years from the date thereof with interest at the rate of five per cent per annum payable annually, that the execution be set aside and that the plaintiff pay the costs."

Plaintiff appealed.

*Errors assigned* were (1) in making absolute rule to

open judgment; (3–22) various rulings on evidence and instructions.

*C. H. Ruhl*, with him *J. K. Grant*, for appellant.

*Isaac Hiester*, with him *William Kerper Stevens* and *Garrett B. Stevens*, for appellee.

OPINION BY MR. JUSTICE STEWART, May 2, 1910:

Plaintiff and defendant entered into articles of agreement for the sale by the former to the latter of a brewery plant with its equipments, and a dwelling house, in the city of Reading. Among other things that were to pass to the defendant under this contract of sale, was the landlord's right in certain leases of licensed properties in the city of Reading of which plaintiff was owner; and upon the expiration of these leases, a new lease of all the properties was to be given to the defendant for the term of ten years at the same rental provided for in the existing leases. The consideration defendant was to pay for all the property and privileges sold was $137,000; of which sum $87,000 was to be a deferred payment to be secured by bond and mortgage upon the premises. The transfer of the brewery license was approved by the court April 8, 1907. Immediately thereupon the cash payment was made, and defendant having received his deed for the premises gave to plaintiff his bond and mortgage for the deferred payment. The leases were not assigned; nor was the lease to the defendant executed or delivered. Six months thereafter plaintiffs caused judgment to be entered by confession on the bond; and claiming default in payment of interest under the terms of the bond, proceeded by execution to enforce collection of the whole debt. Thereupon defendant went into court and asked that execution be stayed and the judgment opened for purpose of defense, assigning as cause, first, that he executed the bond on the representations of the counsel who had prepared it, and who was acting for both parties, that it conformed

as to its terms in all respects to the agreement; that under the agreement the interest was to be payable annually and the principal debt in ten years, whereas under the bond the interest is to be paid semiannually, and the principal debt in one year; that it was not until the execution had been issued that he learned that the bond and judgments entered thereon did not correspond in terms with the stipulations in the written contract; second, that plaintiff having failed and refused to assign and transfer the leases for the licensed properties, and lease to defendant the same properties for a term of ten years as provided in the contract, there had been a failure of consideration to this extent. Upon consideration of the evidence taken on the rule granted the court made the rule absolute and directed an issue for the determination of these questions, (1) how much is owing to plaintiff from defendant? (2) whether said debt is payable in ten years, or in one from the date of the bond and mortgage? and (3) whether interest thereon is payable annually or semiannually? The finding of the jury abated from the judgment $30,916, on account of plaintiff's failure to comply with the contract in regard to the leases, and otherwise reformed the judgment to accord with defendant's contention. The findings being approved by the court, judgment was directed in accordance therewith. We have two appeals to consider: the first being from the order making absolute the rule to open the judgment; the second from the order approving the verdict and directing judgment thereon. As to the first: it is not open to question that if the facts as averred in the defendant's application be taken as true, it would be most inequitable to exact compliance with the strict letter of the bond. If defendant was induced to sign the bond by false representations as to its terms, made by one on whose statements he would have a right to rely, he would have a right to have it reformed so as to correspond with the true understanding of the parties. If the leases entered into the consideration for which the bond was

given and they were wrongfully withheld from him, he would be entitled to relief pro tanto. The reply that defendant could have his action at law to recover value of the leases begs the question. The contract was entire. This appears not only from the contract as written, but the only conclusion derivable from the evidence submitted is that the purpose was to take all the property scheduled in the contract, or none of it. The property was treated as a whole, and its entirety was of the essence of the contract. If in point of value in connection with the business of the brewery plant, the leases bear the proportion to the whole consideration to be paid by the defendant, which the jury has adjudged, it would seem obvious that the benefit to be obtained from these was a most important inducement to the purchase of the brewery and entered essentially into the contract. On the general proposition as to the opening of the judgment, it became simply a question of the sufficiency of the evidence to support the averments. There is but one rule by which the sufficiency of evidence is to be adjudged. If upon the evidence submitted the facts are left so far disputable that a verdict rendered thereon for the defendant would be sustained, then its sufficiency for the purpose of opening the judgment is established; otherwise the judgment may not be opened. The defendant testified that he did not read the bond before signing it; that it was not read to him; that the counsel who had prepared it assured him that it corresponded in terms with the stipulations in the written agreement; and that relying upon this information he executed it. His son, who was present at the signing, testified in corroboration. The court very properly considered as well the very marked variation in the bond from the terms of the contract, which, without any consideration whatever therefor, gave to the plaintiff an advantage over the defendant which the ordinary debtor would be most reluctant to surrender. Under the contract the defendant could not be compelled to pay the principal debt for ten years, and

he was to have the privilege of paying any part of it within that time. Under the bond as written, he was required to pay it all at the expiration of one year. The advantage of the change was wholly and exclusively with the plaintiff, and all the disadvantage wholly and exclusively with the defendant. It was upon such evidence as this that the court directed the opening of the judgment. A mere recital of it is sufficient to show that the judicial discretion was properly exercised.

On the trial of the issue, the same testimony touching the variance between the bond and the contract was presented on part of defendant and prevailed with the jury. Nothing is assigned on this branch of the case except the refusal of the court to give binding instructions for the plaintiff. We have expressed the opinion that it was sufficient to support the verdict, and further discussion is not required. The assignments of error, with this single exception, relate to rulings of the court in connection with the defendant's demand for a reduction of the judgment on account of failure to transfer the leases in accordance with the terms of the contract. It was plaintiff's contention (1) that the defendant had voluntarily surrendered all claim to the leases, and that when settlement was made April 8, 1907, and the bond and mortgage were given, it was understood that the leases were to be accounted of no value, and that the transaction was then and there closed. On the other hand, the defendant contended that the transfer of the leases on that day was impracticable because the amounts due from the several payments which defendant was to assume had not then been ascertained, and the transfer of the leases was simply postponed until these amounts could be ascertained. The testimony was conflicting throughout. But here again it was a question of fact, and a finding by the jury either way would have been so far supported by the evidence as to bring it within established rules and principles. This is our conclusion after a very careful reading of the evidence and full consideration of the ar-

gument advanced for the appellant. The assignments of error are too numerous to permit separate discussion of each. In what we have said a number of them have been disposed of. While all of those remaining have been given consideration, it is only necessary to refer specifically to one or two. On behalf of plaintiff instruction was asked to the effect that defendant could default nothing from the judgment on account of leases, because he had not shown performance of his own covenant with respect to them. The instruction was refused on the ground that the points assumed facts which were for the jury's determination. Conceding that such burden as is here implied rested on the defendant, whether he met it by showing readiness and willingness on his part to perform, depended wholly upon whether the larger credit was to be given defendant and his witnesses or the plaintiff and hers. This again was for the jury. Subsequent to the date of the contract between plaintiff and defendant, and before the giving of the bond, plaintiff had contracted to sell to one Gelsdorf one of the licensed properties which she owned. It was contended that defendant's knowledge of these facts amounted to a waiver of his right to a lease of that particular property, and the court was asked to so instruct the jury. The instruction was properly refused. An affirmance of the points submitted would have been a virtual withdrawal from the jury of the evidence introduced by the defendant to show that while he had knowledge of the existence of the contract for the sale of this property, he had been informed by Gelsdorf that he, Gelsdorf, did not intend to complete his purchase, that he would forfeit his contract and the $500 he had paid to his vendor, and that he, the defendant, had acted in this belief when he executed the bond. The single fact of knowledge on part of defendant, in view of the other evidence in the case, was wholly inadequate to support the conclusion sought to be drawn. Nor did the fact that defendant failed to communicate to plaintiff the information he had

received from Gelsdorf as to the latter's purpose to forfeit his contract, furnish ground for estoppel. There was no relation of confidence between plaintiff and defendant; they stood in no other relation to each other than that of vendor and vendee. A number of assignments relate to the admission of evidence touching the value of the untransferred leases. While more or less latitude was allowed in this connection, we cannot say that it exceeded proper limits, in view of the peculiarity of the subject inquired into. The question presented was one upon which those experienced in the manufacture and sale of beer could speak most intelligently, whether their testimony be called expert or otherwise. Their familiarity with the business and trade enabled them to estimate the value of the control of licensed properties as adjuncts or auxiliaries to a brewery plant, in a way that others could not. All who testified had not equal opportunities of judging; but this is always the case when such inquiries are entered upon. It was for the jury to discriminate between them under proper instructions, and these were given. Upon a careful review of the whole case, we find the record free from error.

The assignments are overruled; both appeals are dismissed at the costs of the appellant, and the judgment is affirmed.