## De Marco v. Frommyer Brick Company, Appellant.

Argued March 21, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Henry J. Lotto,* for appellant.

*Sheldon L. Albert,* with him *James E. Beasley* and *Alan Schwartz,* for appellee.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal from the judgment of the Court of Common Pleas No. 2 of Philadelphia County entered on a verdict of a jury in the amount of $5000, in favor of the plaintiff-appellee, Salvatore De Marco, and against the defendant-appellant, Frommyer Brick Company, in a trespass action for damages as a result of an accident; and from the refusal of motions for a new trial and judgment non obstante veredicto.

The plaintiff, Salvatore De Marco, was a 43-year old construction worker employed by R. E. Carrick and Company, as an oiler and assistant crane operator. He was working on a construction project known as the Ambassador Town House apartments on November 8, 1957. The defendant, Frommyer Brick Company, was a subcontractor, doing the brick and masonry work on this job. At the time of the accident the concrete for the second floor had been poured and so formed a ceiling approximately ten feet above the ground level. On the ground level, Frommyer's employees were mixing lime, sand and water in a large mixing basin. The top of the area was closed off by the cement ceiling and at the sides by piles of building blocks which formed walls around the area. Frommyer employees would make the mix by throwing entire bags of lime into the mixing

vat. This caused the mixture "to explode" and cause a fine dust cloud of lime particles to permeate the area. This became thick and dense because of the confined nature of the area. There was evidence that there had been complaints concerning the alleged negligent mixing and that it was dangerous and likely to cause harm. The defendant issued masks to his workmen to protect them from the danger.

On the day in question the plaintiff was walking from the engineer's shanty to a work area, the usual route taken during his work. As he came around one of the "walls" of cinder blocks into the area of the mixing vat he was suddenly engulfed in a cloud of lime dust. He suffered permanent injuries to his throat and nervous system. This action was brought against the Frommyer Brick Company, who, in turn, brought in as an additional defendant, James F. Nolan & Sons. The court directed a compulsory nonsuit as to the additional defendant.

There was evidence that the Frommyer employees' mixing method did not conform to a reasonable standard of care in lime handling and defendant's own employee testified that a bag of lime dumped in the mixing box would explode, creating a cloud of smoke that would be dangerous. The plaintiff was hospitalized twice as a result of the accident and was treated by two doctors who diagnosed his condition as a persisting tracheal bronchitis and spasmodic laryngitis with permanent secondary changes in the ventricular bands. He suffers from prolapsed ventricles, spasms, and anoxia and traumatic neuroses were engendered. He was, at the time of the trial, still being treated and there was unequivocal medical testimony that his condition was the result of the accident.

His symptoms included acute paroxysms during which he cannot take in any oxygen and which are so acute his face turns blue. He is not able to engage in

any physical activity during these seizures. He suffers violent coughing spells, pain and burning sensation in his throat and chest and brings up heavy mucous. Medical testimony connected these symptoms with the accident and that they existed as long as three years after the accident.

Aside from the usual reasons assigned in the post trial motions, the defendant complains specifically that Matthew Mazza should not have been permitted to give an expert opinion; that a witness, Sussano, should not have been permitted to testify; that it was error to permit Dr. Saltzman to answer the hypothetical question posed as to plaintiff's condition; that it was error to affirm plaintiff's supplemental Points I and VI; and that the verdict was excessive.

We agree with the court below that "there is abundant evidence to support and justify the award of the jury". As to the complaint concerning expert testimony of Matthew Mazza, a civil engineer whose professional training included courses in masonry construction at Villanova University and had many years personal experience in mixing mortar, including years of supervision, both in the open and confined areas, the court after hearing his qualifications permitted him to testify as to standard procedures for mixing mortar. In *Moodie v. Westinghouse Elec. Corp.*, 367 Pa. 493, 501, 80 A. 2d 734 (1951), the Supreme Court said:

"If a witness 'has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Stocker v. Schneider, 228 Pa. 149. "The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily obtainable in such cases": White v. R.R. Co., 222 Pa. 534, 537. Whether the knowledge of the

witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion . . .': McCullough v. Holland Furnace Co., 293 Pa. 45, 49.

"An examination of the qualifications of plaintiff's expert witness reveals that he had more than 'a reasonable pretension to specialized knowledge on the subject'. The trial judge held that his evidence was admissible, and in carefully worded instructions to the jury he left to them the determination of the weight it should give to the testimony of the experts called by both sides." This was true of the testimony of Mazza.

There is no merit to the complaint concerning the foreman Sussano's testimony as to rescuing him from the building and his recitation concerning the plaintiff's coughing spells. The defendant contends that his evidence lacked probative value. The weight of this testimony was for the jury and it should be pointed out that no objection was made concerning it at the time of its admission.

Dr. Saltzman, a Board Certified Otorhinolaryngologist, was called in for consultation by other physicians of the Einstein Medical Center to aid in the diagnosis. The plaintiff remained under his personal observation during his stay in the hospital. A full and complete history was given to him. The doctor examined him on August 11, 1961. On the basis of the history obtained and observation of the plaintiff over a period of time, he testified in answer to a hypothetical question that in his opinion there was a causal connection between plaintiff's inhalation of lime and his medical symptoms.

The complaint of the defendant is based on the alleged use by Dr. Saltzman of Temple University hospital reports that were not introduced into evidence and were not before the jury. He did mention Temple University reports and admitted, on cross-examination,

that they had been a corroborative ingredient in his opinion but that without them and based solely on the evidence before the jury, including the history and physical examination as indicated by the hypothetical question, his answer was the same. The physician may give his opinion based on history, physical examination and medical evidence at the trial. *McMinis v. Phila. Rapid Transit Co.*, 288 Pa. 377, 135 A. 722 (1927).

There was testimony that the plaintiff's symptoms were permanent and that further medical treatment would be needed, and that the symptoms would incapacitate him at times from physical activity. The court properly charged as to the possible impairment of his future earning power and affirmed plaintiff's Point VI to this effect. *Messer v. Beighley*, 409 Pa. 551, 187 A. 2d 168 (1963).

The defendant during the course of this trial attempted to show that the method used in the mixing of the lime in this case was a customary method used for mixing mortar. The court then properly affirmed plaintiff's supplemental Point I, that the customary method of performing work could be a negligent method despite the fact that it was in general use in the trade and could, if the evidence warranted it, be so found by the jury. This was not error.

In view of the medical bills of $779.75 the diagnosis of permanent throat damage requiring future medical expenses, a possible diminution of earning capacity and extensive pain and suffering, the verdict of $5000 did not shock the conscience of the court below and does not shock ours. The refusal of a new trial for inadequacy or excessiveness of verdict lies within the discretion of the trial court and this Court will only interfere if convinced there has been an abuse of that discretion. "If the verdict bears a reasonable resemblance to damages which were proven, it is not the function of this Court to substitute its judgment for that of the

jury." *Mohler v. Worley,* 179 Pa. Superior Ct. 56, 116 A. 2d 342 (1955).

Judgment affirmed.

MONTGOMERY, J., would grant a new trial.