Payne *v.* Wheeler et al., Appellants.

26

Argued November 8, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*Stuart A. Culbertson,* with him *Paul E. Allen,* for appellants.

*F. Joseph Thomas,* with him *R. Charles Thomas,* for appellee.

OPINION BY JACOBS, J., December 16, 1965:

Defendants appeal from a judgment entered on a verdict of $6,500 awarded to the plaintiff in his trespass action. The essential facts are well summarized in the able opinion of President Judge THOMAS for the court below:

"The plaintiff was twenty-three years old and was in the farming business, running his own farm as well as managing a farm partly 'on shares' for another person. On June 27, 1960, a mowing machine which he was operating in his farming operations needed repairs and he went to the business establishment of the defendant to get three small parts to repair his mowing machine. Accompanying him to the defendant's place of business was his friend Frank Hites. The defendant's business was temporarily being carried on in an old building approximately 40 x 50 feet because a fire had damaged or destroyed their previous permanent

place of business. On the day in question, after inquiry about the parts, the plaintiff and Mr. Hites were directed by the deceased partner, Earl W. Wheeler, to go upstairs to the second floor to look for the parts requested, as apparently spare parts and certain damaged or burned parts recovered from the fire were stored there. The second floor was not used generally to serve customers but was accessible from an open stairway erected against the rear inside wall of the building.

"The plaintiff and Hites, with Hites leading, proceeded up the stairway and remained on the second floor for a period of time. In coming down, the plaintiff preceded Hites and was descending the stairway with a small chain, approximately 30 inches in length, and two other small parts in his hand. As he proceeded down the stairs, he slipped down the steps and in an effort to catch himself, thrust his left hand through a large window at the foot of the stairs, severely cutting his left arm above the wrist. The injury was a cut on the volar surface of the left arm and required the services of a physician who took approximately 15 to 20 sutures. The left arm was carried in a sling for a week or ten days and the plaintiff was unable to use his left arm with any efficiency for normal farm work for approximately six weeks. After two or three months the plaintiff was again able to use his arm in a normal fashion, but the plaintiff presented testimony showing his damages from loss of work, inability to plant and harvest crops, and the expenses of employing others to do certain farming operations for him during his disability period."

Defendants ask this court to enter a judgment n.o.v. or to grant a new trial. We reject their contentions and agree with the lower court that the jury verdict should not be disturbed.

In arguing for a judgment n.o.v. defendants would have us hold that plaintiff's fall was not caused by any

28

negligence on their part or that plaintiff was guilty of contributory negligence as a matter of law. The testimony in this case does not permit us to so hold. We have examined the testimony in the light most favorable to the verdict-winner, giving him the benefit of every fact and every reasonable inference of fact arising therefrom and resolving any conflict in the evidence in his favor, as we are required to do in considering a request for a judgment n.o.v. *McDonald v. Ferrebee*, 366 Pa. 543, 79 A. 2d 232 (1951) ; *Mack v. Ferebee*, 204 Pa. Superior Ct. 129, 203 A. 2d 350 (1964).

So viewed, the testimony establishes that plaintiff was told to go upstairs in defendants' place of business to look for the parts he wanted to buy from the defendants. Coming down this stairway, which was an unusual, narrow stairway for a business establishment, plaintiff testified "there was some magazines on the stairs and my feet hit 'em and out I went and I went to catch myself and I throwed my arm through the window." He testified that he did not see the magazines "because the window was dirty, they painted machinery, it was sprayed, I mean it wasn't sprayed real solid, but it had a lot of spray. . . ." Mr. Hites, who was following plaintiff down the stairs, testified that he was sure plaintiff slipped on the papers or magazines, which both he and plaintiff said were lying back against the riser of the fourth or fifth step from the bottom. He also testified that there was no railing on either side of the steps and no electrical illumination of the stairs, and corroborated plaintiff's testimony that the window was dirty. Pictures introduced by the defendants indicate that the window, even when very clean, sheds little light above the bottom three steps. One defendant testified that he knew there were leaflets on the path plaintiff had to travel, although he said they were on the landing. From all this testimony the jury could properly find that defendants violated

a duty owed to plaintiff, a business visitor, and that this violation caused plaintiff to fall. A possessor of property owes a business visitor a duty to maintain the premises in a reasonably safe condition for the contemplated uses thereof and for the purposes for which the invitation was extended or to warn the visitor of the existence of a dangerous condition on the premises of which the possessor had knowledge. *Hallbauer v. Zarfoss,* 191 Pa. Superior Ct. 171, 156 A. 2d 542 (1959).[1]

The defendants also ask us to declare plaintiff contributorily negligent as a matter of law. We may do this only when contributory negligence is so clearly revealed that fair and reasonable persons cannot disagree as to its existence. *Charles v. LaRue,* 205 Pa. Superior Ct. 88, 208 A. 2d 31 (1965). In this case the standard of care required of plaintiff is that of a business visitor who was entitled to rely on defendants' performance of their affirmative duty in the premises. *Vetter v. Great Atlantic & Pacific Tea Co.,* 322 Pa. 449, 185 A. 613 (1936). Defendants' contention that since Hites testified that he saw the magazines as he went up the stairs, the plaintiff should have seen and avoided them when plaintiff came down the stairs is an argument more properly addressed to the jury. It was for them to consider this testimony, as well as the inference that Hites' presence immediately in front of plaintiff as they passed the window ascending the stairs may well have diminished the amount of light that came through the window so that plaintiff could not see the magazines. In view of the narrow and steep stairway, the question-

---

[1] Distinguishable is *Radies v. Reading Liederkranz German Singing & Sport Society,* 197 Pa. Superior Ct. 509, 178 A. 2d 789 (1962), in which Judge WRIGHT pointed out that there was no foreign substance on the steps and the record did not disclose the exact manner in which the accident occurred or that the alleged defects in the stairs actually caused the fall.

able light, the fact that this was the first time the plaintiff had ever used the stairs, the fact that there was no railing, we cannot say that plaintiff was negligent as a matter of law in not seeing the magazines as he made his way down the stairway.

In their argument for a new trial, defendants complain that the verdict was excessive. Refusal of a new trial for excessiveness of the verdict lies in the discretion of the trial court and the appellate court will interfere only if convinced there has been an abuse of that discretion. *DeMarco v. Frommyer Brick Co.*, 203 Pa. Superior Ct. 486, 201 A. 2d 234 (1964). In this case, the plaintiff, a farmer, could do no work at all with the injured arm for a period of six weeks. It was two or three months before it healed sufficiently to allow plaintiff to return to normal work. He presented evidence that he had to hire additional workers to help him and that he lost earnings for work he had been doing on a neighboring farm. It was for the jury to determine whether the hired workers, some of whom were relatives, did the work and were entitled to the pay they claimed. He also testified that because of his injury he could not cultivate a newly planted corn crop and since he could not hire anyone to do it for him, he lost a large portion of the crop, which required the purchase of other corn. Plaintiff's testimony indicates expenses and loss of wages totalling about $3,397.50. In addition, plaintiff testified that there is a permanent numbness of the skin in the vicinity of the wound, which fact was verified by his doctor, and that in cold weather his arm turns black and blue, becomes numb and at times aches. He also complained of a weakness in the left hand and a diminution of gripping power. This 23 year-old man also has a permanent scar on the left wrist, where the three or four inch laceration was sutured. Under all the circumstances, the $6,500 ver-

dict did not shock the conscience of the court below and does not shock ours.

We have also carefully considered the other contentions of the defendants that the verdict was against the evidence, the weight of the evidence and the charge of the court. We find no merit in them. This case was vigorously presented by both sides and ably tried by the late Judge MOOK. We will not disturb the jury's verdict.

Judgment affirmed.