## Shafner *against* Gilmore.

The proceeds of the sale of personal property levied and sold upon three writs of *fieri facias*, must be appropriated to the first which came to the hands of the sheriff; although the property sold was acquired by the debtor after the first two executions, and before the third came to the sheriff's hands.

ERROR to the Common Pleas of *Franklin* county.

Shafner & Co. against Gilmore & Davis. Amicable action, in which the following facts were stated in the nature of a special verdict:—

A *fieri facias* at the suit of Shafner & Co. against James R.

[Shafner v. Gilmore.]

Kirby, was placed in the hands of the sheriff on the 5th of December 1840, in the morning, and a levy made on merchandise of the defendants, consisting of various goods, &c., all personal property.

On the same day, in the evening, another *fieri facias*, at the suit of John Cree, was placed in the hands of the same sheriff, against James R. Kirby, and the same levy made as above on the same day, subject to former levy.

On the 11th of December 1840, another *fieri facias*, at the suit of Gilmore & Davis, was placed in the hands of the same sheriff; and on the same day the sheriff levied on some boxes of boots and shoes, &c.; and on the 15th of December the same boxes were levied on by the sheriff on the two first executions.

These several executions were returnable on the 2d Monday of January 1841.

The boxes of boots and shoes were brought into the county of Franklin as the property of James R. Kirby, after the issuing of the two first executions of Shafner & Co. and John Cree, and before the issuing of the executions of Gilmore & Davis. The property levied on was all sold by the sheriff on the 12th of January. The amount of sales of first levy was $553.90, leaving a balance due Shafner & Co. on their execution of $252.96, and due on J. Cree's execution the whole debt of $823.20. The amount raised by the sale of the second levy was $118.00.

The court below directed the proceeds of second levy, $118, to be divided *pro rata* between the two first executions, giving to Shafner & Co. $27.73, and to John Cree $90.26; and judgment was so entered.

The plaintiffs assigned for error, that judgment was only entered in their favour for $27.73, whereas it should have been entered for the $118, the amount of sale of the boxes, as contained in the second levy.

The defendants assigned for error, that the court erred in entering judgment for Shafner & Co. and John Cree, whereas the judgment should have been in their favour for $118.

*Chambers*, for the first execution creditor.
*Nill*, for the second.
*Reiley*, for the third.

The opinion of the Court was delivered by

Rogers, J.—By a *fieri facias*, which is a judicial writ, the sheriff is commanded to levy the debt or damages of the goods and chattels of the person against whom the recovery is had, and have the money and the writ before the court on the return day. And although it has not been expressly adjudicated, yet it cannot be well doubted that the sheriff may seize the goods of the defendant before the return day of the writ, without any responsibility arising from the time they become the property of the debtor, whe-

[Shafner v. Gilmore.]

ther before or after the execution was placed in his hands. It would not excuse the sheriff that he omitted to levy because the goods were acquired by the debtor after the execution, for it is his duty to seize all the property of the debtor in his bailiwick at the time of the levy, when or however acquired. And this was done here. The sheriff of the county of Franklin sold the goods of the debtor on three several executions, one placed in his hands after the goods came into his bailiwick, the other two received at different times, and in his hands at the time the goods arrived in the county. The sheriff sold the property and brought the proceeds of sale into court for distribution, and the question is, to which execution creditor the money belongs. The claim of the last execution creditor has been faintly urged, and the contest really is between the two first, to whom the court adjudged it. It is urged in favour of the second that he is entitled to a *pro ratâ* dividend of the money with the first execution creditor; and so the court adjudged, because it is said the lien of both executions attached on the goods the instant they came within the borders of the county, and that therefore each has an equal right by virtue of the lien. There is some plausibility in the argument it must be confessed, and were it not from considerations of policy, we should be disposed to give it full effect. This case must be ruled without authority, as we can point to no decision bearing directly upon it, although it must often occur that property is acquired by a debtor either by descent or purchase after the delivery of the execution. The point has not been ruled, because, as is very probable, it has never been supposed that any inquiry as to the time would be available, or that it was in any way material when the goods came into the bailiwick of the sheriff. The *argumentum ab inconvenienti* bears strongly on this point. When an execution is delivered, the sheriff cannot, in many cases, know the extent and nature of the debtor's personal property; and when he comes to make the levy, it may be, and frequently is increased in the intermediate time, either by bequest or by acquisition in the many modes by which such property is acquired. To make it obligatory on him to distribute the proceeds among the creditors according to the time it was acquired, would be difficult, and in some cases, impossible. And granting, which is very questionable, that the sheriff will be excused for a misapplication of the money when he acts in ignorance of the facts, yet a great responsibility must be thrown upon him, which would be the occasion, and frequently the pretext for great difficulty and delay. In every case it would create an issue, which it would sometimes be difficult to settle, and many controversies would arise out of the same transaction. Thus, for example, and this is put as one instance out of many which may be supposed, in the case of a merchant who acquires property by purchase, of every species and every kind, almost every day. It may readily be conceived what perplexity

[Shafner v. Gilmore.]

it would occasion to ascertain when each article of property, on which the levy was made, came into the possession of the debtor. And how easy, and how great the temptation to the defendant to favour one creditor at the expense of another! It is desirable that we should not vary the rule adopted by the Act, which is plain, intelligible, and simple, and substitute one which will inevitably increase litigation without any benefit whatever to compensate for it. An execution, which is the end, would be but the beginning of a lawsuit. At the common law, the goods of a party against whom a writ of *fieri facias* issued, were bound from the *teste* of the writ. But by our Act, which corresponds with the English Statute, no writ of *fieri facias*, or other writ of execution, binds the property but from the time it is delivered to the sheriff. And to ascertain the time, the sheriff is directed to endorse on the writ the day of the month, the year, and the hour of the day when he receives it. This statute was passed not only to protect purchasers, but to settle by an unerring rule the conflicting claims of execution creditors. And this is the construction which has always been put upon the Act. All the sheriff has to do, is to look to his execution to determine to whom the money belongs. It would be a practical inconvenience to require him to ascertain when the goods were acquired and when they came into his bailiwick. There is nothing in the Act which implies that the title of the creditors depends upon the time the goods were bound. But the construction has uniformly been that it depends upon the time the execution was delivered to the sheriff, indicated as it must be, by an endorsement on the back of the writ of the day, hour, and year he received it.

Decree reversed, and the money ordered to be paid to the first execution creditor.