# Wilson, Sieger & Co's. Appeal.

Where an execution was levied on defendant's personal property, subject to former levies, and enumerating various personal property, (but not specifying any cord wood,) "*and all the defendant's personal property not exempted by law;*" and a subsequent execution, issued to the same term, which was returned, levied on certain personal property, naming it, subject to certain specified *fi. fa's* , and all former levies remaining on said personal property of defendant's, "*and also a large quantity of cord wood and small qunatity of iron ore.*"

Held, that the proceeds of sale of the *wood and ore*, were applicable to the first execution; and that evidence was not admissible to shew, that the wood was acquired *after the levy was made on the first execution*, if the same were acquired by defendants before the return day of that execution.

APPEAL from the decree of the Common Pleas of *Perry county.*

A *fi. fa.* was issued in favor of Wilson, Sieger & Co. *vs.* McGowan and McKeehan, returnable to April term, 1849, No. 1., issued 6th January, 1849, which was returned "January 11th, 1849, levied on the defendant's personal property, subject to levy on *fi. fa.*, No. 3 January term, 1848, and other levies, to wit : six gray horses, gears and wagon, five bay horses, gears &c., and all the defendant's personal property not exempted by law."

Another *fi. fa.* was issued subsequently, viz : 10th January, 1849, docketed No. 3, April term, 1849, on judgment of L. M. Troutman, on which was returned a levy made March 24th, 1849, on twelve horses and horse gears, four wagons, and a large amount

of other personal property, specifying it generally, and all the defendant's property not exempted by law, subject nevertheless to levies on *fi. fa's.* No. 3 January term 1848; Nos. 42, 68 and 69 of August term 1848; No. 39 October term 1848; No. 1 January term 1849; No. 64 January term 1849, and all former levies remaining on said personal property of defendant's, *and also a large quantity of cord wood and small quantity of iron ore,* as the property of McGowan and McKeehan.

It appeared by the evidence before the auditors, that a small portion of the wood and ore was acquired by the defendants on the 11th January, 1849, *when Wilson Sieger & Co's. levy was made,* but that most of it was acquired between that date and the latter part of March, 1849. Their execution was returnable to April term 1849.

The amount in dispute was about $571,07.

The court, BLACK President, decreed the money to the second execution of Troutman.

Appeal on the part of Wilson, Sieger & Co.

The case was argued by *Hepburn,* for Wilson, Sieger & Co.— That the comprehensive addition, "and all the defendants property not exempted by law," followed by a sale, entitled the execution of Wilson, Sieger & Co. to the proceeds; 7 *W. & S.* 134.

*Macfarlane,* for Troutman, the appellee.—He contended that the levy on "all the defendant's property not exempted by law," was not sufficient to include the cord wood and iron ore.

He cited 2 *S. & R.* 157, Lewis *vs.* Smith; 3 *Rawle* 406; do. 341; 1 *Wh. R.* 378.

That the sheriff's return is conclusive against himself, and as to execution creditors, 7 *W. & S.* 67; 2 *Barr* 95; 5 do. 310.

The opinion of the court was delivered by

ROGERS, J.—To arrive at a correct result in the distribution of the proceeds of sale, it is necessary to determine the extent of the levy on the execution of Wilson, Sieger & Co., an execution prior in time to the execution of L. M. Troutman, to whom the money was adjudged. The levy runs thus: January 11, 1849, levied on the defendant's personal property, subject to levy on *fi. fa.,* No. 3 January term 1848, and other levies, to wit: six gray horses, gears and wagon, five bay horses, gears and wagon, six mules, gears and wagon, lot of castings and reaction water wheel, blacksmith tools, store goods, &c., &c.; *and all the defendant's personal property not exempted by law.* The language of the levy is as broad and comprehensive as words can make it, for not to insist on the *et ceteras* in which my Lord COKE discovers much virtue, to remove all doubt, there is the sweeping clause, "*and all the de-*

*fendant's personal property not exempted by law."* That the sheriff therefore intended to include every thing of a personal nature, of whatever kind or description the debtor possessed, is beyond doubt or cavil. That such a levy is good as against the defendants in the execution, will not be disputed. The sheriff would have the unquestionable right to sell all the debtors property then possessed or afterwards acquired, whether by descent or purchase, although not expressly enumerated. When the sheriff levies on a specific article, or articles, naming them, without more, he will be confined to his levy; as for example, where he levies on a horse, he will not be permitted to sell a cow, or other article of property.

But not so when words are added as very plainly indicating his intention to include other property, although not specifically named or enumerated. And in this consists the distinction. It is undoubtedly true, that the more particular the sheriff is in the enumeration of the property, the better; but that he should be compelled to name every article, if not impossible, as in the case of the failure of a merchant engaged in an extensive business, or iron master, would be so extremely inconvenient, expensive and troublesome, as hardly to be compensated by any advantages likely to arise, either to the debtor or creditors. And hence such an execution of the writ in this State has been tolerated, and the law may now be considered as settled. Thus in Lewis *vs.* Smith, 2 *S. & R.* 142, a levy on part of the goods enumerated with &c., &c., in the name of the whole, was held to be a good levy, and sufficiently certain. Rules of law must be adapted to the situation of the country, its habits and practice, and with a view in some measure, to the exigencies of each particular case. The money now in court for distribution is the proceeds of the sale, on all the executions in the hands of the sheriff, including as well the execution of Wilson, Sieger & Co., as the execution of L. M. Troutman. On this shewing, it would seem to be clear the money belongs to the first execution creditor. It is, however, strenuously contended, the second execution creditor, Troutman, is entitled to the money, (and so the court decided,) on two grounds. 1st. That the cord wood and iron ore was not in existence, in part at least, at the time of the first levy; and second, if in existence, it was not enumerated in the first levy, but was particularly named in the second or Troutman levy.

The first reason is founded on the assumption of a point which neither does, nor can judicially appear. Evidence is not admissible to prove when the property, whether by descent or purchase, was acquired by the debtor. For, whether before or after the levy, if acquired before the return day, it is immaterial as regards the distribution of the fund. This is ruled in Shaffner *vs.* Gilmore, 3 *W. & S.* 438. It is there held that the proceeds of the sale of

personal property, levied on and sold upon three writs of *fi. fa.*, must be appropriated to the first which came to the hands of the sheriff, although the property sold was acquired by the debtor, after the two first executions, and before the third came to his hands. The case is put on the ground of public policy which we then thought, and I now think, reasonable and sound, the rule being well calculated, and so intended to avoid that delay, litigation and uncertainty, which would necessarily arise from the introduction of parol testimony, to ascertain when the goods were acquired, or when they came into the sheriff's bailiwick. But it is said the second execution must be first paid, because in the levy on that execution, the sheriff particularly names cord wood and iron ore, (the proceeds of which is now to be distributed); unlike the first, where it is not referred to, except in general terms. But if as ruled in Shaffner *vs.* Gilmore, and Lewis *vs.* Smith, the property, though not named in the first levy, is nevertheless embraced in the general terms used, and therefore, as first in time, entitled to the money, how the particular enumeration in the second levy can direct the lien and give him a superior title, I am at a loss to understand. The first execution creditors claim the money on two grounds, that they are first in time, and therefore prior in right; and because their property in question is embraced, although in general terms in his levy. The second execution creditor insists it must be paid to him, for the sole reason that the wood and ore is particularly enumerated in his levy, and is not specifically named in the levy in the first execution. That for this reason the first execution is postponed to the second. It is strenuously contended, that the subsequent levy shows that the sheriff did not intend to include the wood or ore in the first levy. But this, as a legitimate conclusion, does not strike me to be very apparent. It merely evinces that the sheriff was more particular in refering to the different articles of property belonging to the debtor, in his second, than in his first levy. But can this, which may have arisen more from accident than design, control the legal operation of the first levy, thereby depriving, by the fiat of the sheriff, the first execution creditor of a debt to which he is otherwise legally entitled. But admitting the power of the sheriff, which I am by no means disposed to concede, yet I perceive no reason for believing he intended to assume any such legal responsibility.

The court of Common Pleas ruled the case on the authority of McClelland *vs.* Slingluff, 7 *W.* & *S.* 134. But in that case there was no levy at all upon the property sold, except on the *fi. fa.*, which claimed the money.

The other *fi. fa.* in the hands of the sheriff, to which he applied the money, had no levy made upon it, and consequently the sheriff was held liable. But here there was a levy on both executions,

as has been already shewn, and in this consists the distinction between the cases.

Decree reversed, and the money ordered to be paid to Wilson, Sieger & Co., the first execution creditors.