Jenkins, Administratrix, *v.* Poley, Appellant.

Argued October 4, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Frank R. Ambler,* for appellant.

*Daniel Marcu,* for appellee.

OPINION BY DITHRICH, J., December 11, 1946:

The sole question involved in this appeal from the refusal of defendant's motion for judgment non obstante veredicto is whether there was sufficient evidence of negligence on his part to take the case to the jury. In our opinion, there was.

For present purposes, we must view the record in the light most favorable to plaintiff and give her the benefit of every fact and inference of fact properly deducible from the evidence. *DiGregorio v. Skinner et al.,* 351 Pa. 441, 41 A. 2d 649.

Viewed in that light, it appears that plaintiff's husband had been fishing in the Schuylkill River in the early morning of February 10, 1945. At or about 3:30 A.M., defendant was driving his automobile north on West River Drive in Fairmount Park, Philadelphia. When he reached a point approximately 580 feet north of the lower deck of the Spring Garden Street Bridge

over the Schuylkill on a straightaway of 635 feet, 37 feet wide, he struck and fatally injured plaintiff's decedent.

At the time, the deceased was pushing an old baby carriage on or in which was a box approximately 30 by 18 inches in size, containing some fish, and a fishing pole or net. In which direction he was proceeding does not appear from the testimony (there were no eye witnesses to the accident), but a pool of blood 18 inches in diameter was found some few feet west of the center line of the highway. Defendant said his automobile was on the east side of the driveway when he struck an "object." What the "object" was he did not say, but it clearly appears from all the evidence that it was the man who was killed.

He died of "multiple" injuries including a gash on the right side of his head, a crushed chest, and a fracture of the pelvis. In a statement given to the police immediately following the accident, defendant said that he saw the fishing net ". . . in front of his headlights just before he struck the *object*." (Italics supplied.) He did not appear or offer any testimony at the trial. The radiator ornament on his automobile was knocked off, there was a dent on the right side of the hood, and some slight damage to the right front bumper near the headlight. The force with which the "object" was struck, sufficient to cause the multiple injuries resulting in death and the damage to the automobile, is evidence from which the speed at which the automobile was being operated may reasonably be inferred. If defendant's statement that he was driving on the east side of the parkway is accepted as true, the presence of the pool of blood on the west side would indicate that the deceased had been hurled there and would either be further evidence of speed or mute evidence that the deceased was struck on the west side, which would be the left or wrong side in the direction defendant was proceeding.

What was said by the Supreme Court, speaking through the present Chief Justice MAXEY, in *Morin v. Kreidt,* 310 Pa. 90, 96, 164 A. 799, 800, may very appropriately be said here at the outset of this opinion: "We think there was sufficient evidence in this case to submit to the jury the question whether or not defendant was sufficiently attentive to the pathway ahead and whether or not in all other respects also he showed due care under the circumstances."

He does not describe the "object" as suddenly appearing before him and, as pointed out by the learned president judge of the court below, "If he could see the pole, carriage and net in the light of his headlights, which were in good order, he could have seen the deceased, who if he were carrying the pole could not have been more than the length of the pole away.

"The defendant avoided, when talking to the detective, and testifying before the coroner, any statement that he had seen the deceased. He could have testified whether or not the latter appeared suddenly in his pathway. But for some unexplained reason . . ." he did not take the stand in his own defense and when called as for cross-examination by counsel for plaintiff, he failed to answer. Continuing the quotation from the opinion of the court below, "He had given his account of the accident to the detective and before the coroner, and on neither occasion did he speak of the deceased appearing suddenly or crossing unexpectedly. All he could or would say was that he struck an object. The 'object' was a man and the defendant must have been able to see him. . . ." With that conclusion of the learned court below, we are in entire accord. Either defendant was not paying attention to the highway ahead or he was driving at an excessive rate of speed or on his wrong side of the road. In *Hutchinson v. Follmer Trucking Company,* 333 Pa. 424, 427, 5 A. 2d 182, 183, 184, the Supreme Court, speaking through Mr.

Justice STERN, said: "No principle of the law of negligence has been more frequently emphasized in recent decisions [2] than that establishing the duty of the operator of a motor vehicle to maintain such control over it as to enable him to bring it to a stop within the range of its headlights,— . . . : (citing cases)." See also *Weibel v. Ferguson*, 342 Pa. 113, 19 A. 2d 357, and *Gilbert v. Stipa*, 157 Pa. Superior Ct. 1, 41 A. 2d 284.

Judgment affirmed.

---

[2] "It is also imbedded in the statutory law: Act of May 1, 1929, P. L. 905, sec. 1002, and amendments."