Snyder *v.* Nehila, Appellant.

Argued March 19, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (WATKINS, J., absent).

*Francis H. S. Ede,* for appellant.

*Raymond J. DeRaymond,* with him *George F. Coffin, Jr.,* for appellee.

OPINION BY HIRT, J., June 11, 1957:

Plaintiff, in the early morning of January 24, 1954, alighted from a bus on the east side of North Third Street in Easton, just south of Bushkill Street. She was employed by the Desreaux Company and she was on her way to work. To reach the plant of her employer on Third Street just north of the intersection, it was necessary for her to cross Bushkill Street. She walked to the south curb and stopped there because of a red traffic signal against her. She observed an eastbound automobile at the southwest corner of the two streets and two southbound cars stopped on Third Street by the red light. When the light changed to green she continued to wait at the curb until all vehicles in the vicinity of the intersection had cleared it. She then committed herself to the crossing of Bushkill Street on the east crosswalk. When she reached a point at or about the middle of Bushkill Street she observed the defendant's car, traveling south on Third Street as it made a left turn in the intersection into

Bushkill Street. She was struck there by his car and was thrown to the pavement. In this action, brought by her to recover damages for her serious injuries, the jury in its verdict awarded her but $1,100. The lower court refused defendant's motion for judgment n.o.v. but awarded a new trial on plaintiff's application on the ground of inadequacy of the verdict.

Plaintiff's testimony is that, at a point near the center line of Bushkill Street, she looked to the east and watched an approaching westbound car to make sure that the driver would heed the warning of the traffic light against him and would honor her right of way. When that car did come to a stop east of Third Street, plaintiff proceeded in her crossing of Bushkill Street. She said that she then saw defendant's car for the first time and that it was then "very close to me" as "He was cutting the corner" in turning into Bushkill Street.

In general "When a driver of a car approaches a regular crossing at an intersecting street, he is bound to exercise the greatest care for pedestrians thereon, and the car must be operated so as to stop on the shortest possible notice": *Rhoads et ux. v. Herbert*, 298 Pa. 522, 148 A. 693. The duty imposed by this rule is particularly applicable to the driver of a car turning to the left into an intersecting street. A pedestrian on a regular crossing, in view of a driver, has rights superior to those of the driver of an approaching car. And it has been said that "An automobile cannot dash around a corner at an undue rate of speed and crash into vehicle or pedestrian, without subjecting the driver to liability. When this duty is disregarded, and an accident happens, responsibility in damages follows": *Prisco v. DiFabio*, 133 Pa. Superior Ct. 299, 2 A. 2d 576; *Rhoads et ux. v. Herbert*, supra. Plaintiff in committing herself to the crossing had the right to assume

that a motorist on Third Street would not violate the law by turning to his left into Bushkill Street against a red light controlling eastbound traffic on that street, and carelessly run her down. Cf. *Jordan v. Kennedy*, 180 Pa. Superior Ct. 593, 119 A. 2d 679. Plaintiff is not chargeable with contributory negligence even under the defendant's own testimony and on this record the jury hardly could have done other than to find the defendant guilty of negligence. The defendant's motion for judgment n.o.v. was properly refused.

So also, the defendant may not be heard to complain of the action of the lower court in granting a new trial for inadequacy of the verdict. The governing principle has been thus stated: "The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court whose action will not be reversed on appeal except for a clear abuse of discretion such as where a new trial is refused when the verdict is so unreasonably low as to present a clear case of injustice: Fabel v. Hazlett, 157 Pa. Superior Ct. 416, 422, 43 A. 2d 373; Patterson v. Pittsburgh Railways Company, 136 Pa. Superior Ct. 432, 7 A. 2d 478": *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86; *Nikisher v. Benninger*, 377 Pa. 564, 105 A. 2d 281; *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A. 2d 816.

At the time of her injury plaintiff was about 54 years old. She had established an excellent work record with her employer over a continuous period of 16 years. Her work as a "seamer" called for muscular effort. Following her injury on January 21, 1954, she was attended by her own physician until March of the same year when she was referred to Dr. Rolfe Johnson, an orthopedic surgeon of admitted integrity and high standing. He treated her for limitation of motion and pain in her left shoulder, with varying suc-

cess, and later had her re-admitted to the Easton Hospital. She was subsequently referred to two other physicians, one of whom specialized in psychiatry. Dr. Lesse, the psychiatrist, testified that plaintiff has a neurosis of "severe and disabling proportions" caused by the accident and that she is incapacitated by this condition, just as much as if she had some severe physical injury. Plaintiff had lost weight and she testified that she suffered terrific pains. A general surgeon called by the defendant testified "This lady has a marked degree of psychoneurosis, with exaggeration in her mind of sensations, and the treatment, in my opinion, is entirely psychiatric. This is in no way to be construed that she is malingering, but more a degree of hysteria, which is a psychiatric disturbance and not symptomatic." He stated that in time a complete recovery might be expected but he did not express an opinion as to when that might be accomplished.

The hospital expense and the cost of medical treatment amounted to $478.84 leaving from a verdict of $1,100 only $621.66 as an award for loss of earning capacity, future medical expense, and pain and suffering. She had earned $50 per week in her employment and has not worked since her injury on January 21, 1954. The fact that she is dependent on her earnings for a living is further evidence that she is not malingering.

The verdict under the testimony in this case appears to be "so unreasonably low as to present a clear case of injustice". Accordingly, the lower court cannot be charged with an abuse of discretion in awarding a second trial.

Orders affirmed.

WRIGHT, J., concurs in the result.

OPINION BY WOODSIDE, J., DISSENTING IN PART AND CONCURRING IN PART:

I concur with the majority that judgment n.o.v. should be refused, but I think it was error for the court below to grant a new trial. As suggested by the majority, the medical evidence shows that the plaintiff is suffering from neurosis rather than from physical injury. If the jury makes only a limited award for this condition I think the courts should not set the verdict aside. I would enter judgment on the verdict.