Mack *v.* Ferebee, Appellant.

Argued June 9, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

130

*Samuel M. Brodsky,* for appellant.

*Charles W. Bowser,* for appellee.

OPINION BY MONTGOMERY, J., September 17, 1964:
In this action of trespass plaintiff-appellee recovered a verdict for personal injuries allegedly sustained when struck by defendant-appellant's automobile. This appeal is from the judgment entered on that verdict after the appellant's motion for judgment n.o.v. was denied. The sole issue before us is whether the evidence is sufficient to sustain the verdict.

There were no eyewitnesses to the actual happening of the accident. However, all of the evidence which was submitted to the jury must be read in the light most advantageous to the appellee, all conflicts therein must be resolved in his favor, and he must be given the benefit of every fact and inference of fact pertaining to the issues involved which reasonably may be deduced therefrom. *Murphy v. Bargain City, U.S.A., Inc.,* 203 Pa. Superior Ct. 406, 201 A. 2d 299 (1964).

The accident occurred on Friday, February 6, 1959, at about 11:30 a.m. on Broad Street in the City of Philadelphia near the intersection of Broad Street, Erie Avenue, and Germantown Avenue, a spacious and irregular intersection, with two sets of streetcar tracks running north and south on Broad Street and Germantown Avenue and two sets of streetcar tracks running east and west on Erie Avenue. (The part of Broad Street referred to is in fact an extension of Germantown Avenue as it crosses Erie Avenue and converges

with Broad Street.) There were three concrete traffic islands in the wide expanse of Broad Street near the intersection aforesaid. The west rail of the south-bound car track on Germantown Avenue paralleled one of those islands, being within two feet of it throughout its entire length of 62 feet. The island was 5 feet 6 inches in width. The entire intersection was controlled by traffic lights which were in operation at the time of the accident. A separate pedestrian traffic signal controlled pedestrian traffic crossing Germantown Avenue and Broad Street so that when motor traffic was moving on Erie Avenue pedestrians moved across Broad Street and Germantown Avenue. The day was clear and dry—"daylight and sunny." Parking of automobiles was prohibited in this area and there is no evidence that any were parked there at the time of this accident.

Police officer John J. Mallon, who arrived at 12:10 p.m., found a spot of blood on the street very close to the south end of the island (alluded to as No. 3), which area was within a crosswalk for pedestrians. He also found appellant's 1956 Chrysler coupe automobile, with its windshield shattered on the right side, which was the side nearest to the island of cars traveling south on Broad Street. This was its only damage and there were no other marks on the automobile. At the police station at 1:15 p.m. Officer Mallon took the following verbal statement from appellant: "I was driving south on Germantown Avenue, straddling the southbound trolley rails, at about 20 miles per hour. As I approached Erie Avenue I was passing the safety island with the green light. As I neared the south end of the safety island I heard this bump. I then stopped and looked around and I saw this fellow lying in the street. I pulled my auto over to the south side of Erie, ran back, and saw this colored man bleeding from the head. The police arrived, and the firemen, and an

emergency patrol arrived and took this man to the hospital. I did not see this man before the accident. My right side windshield was broken as a result of this accident."

Officer William Bincarousky was near the intersection at the time of the accident but did not see it. He heard someone yell, "Somebody got hit." He saw a man identified as appellee lying about two feet from the south end of the No. 3 island in the crosswalk for pedestrians and "bleeding furiously" from his head. He did not see appellant's car until after it had been parked south of Erie Avenue. He noticed the shattered windshield.

The record of Temple University Hospital disclosed that appellee was admitted February 6, 1959, at 12:15 p.m. in an unconscious condition. His eyes were swollen and closed. He had multiple abrasions or scrape marks of the face and eyes and right leg. Later examinations revealed a fracture of the rim of the right orbit. He suffered from amnesia for several days. His concentration and memory were impaired and poor for a month. His left hand had been amputated in 1945.

The appellant, called by appellee for cross-examination, testified that at 11:30 a.m. on a clear day he was proceeding south on Germantown Avenue (Broad Street) toward Erie, straddling the west rail of southbound trolley track, the rail nearest traffic island No. 3; that there were no cars ahead, nothing to obstruct his view, and no cars approaching him; that he was looking ahead toward Erie Avenue, with a green light in his favor; and that he saw no one on No. 3 traffic island. He testified: ". . . as I passed the southernmost end of the traffic island [No. 3], I heard a bump. I looked in the rear view mirror and I saw a fellow laying in the street in front of the south end of the island, and I stopped my car. I got out and I

walked back. . . . when I heard this bump, the car was approximately one-third past the island then." He testified further that he did not see anyone before he heard the bump and did not apply his brakes until after he had heard it, had looked back, and had seen a man lying in the street. He stopped his car "not quite in the middle of Erie Avenue." (Approximate distance would be 40 to 50 feet according to map, from south end of island—plus two-thirds of car.)

Appellee's testimony was to the effect that he had gone to buy a paper at a newsstand on the northwest corner of Broad and Erie, then had crossed Broad to island No. 3 with the light in his favor, and the last thing he remembered is that he was standing on the south end of island No. 3. He remembered nothing thereafter until later when he found himself in the hospital.

From this testimony the jury could very well "visualize" the accident as happening in the following manner: As appellee stood on the edge of the safety island prepared to step off in continuing his crossing of Broad Street, appellant drove his car so close to the island that his windshield struck appellee's head as he leaned forward prepared to continue his crossing of Broad Street, and the impact caused him to fall off the south end of the island. Although there were no eyewitnesses to testify that the impact of appellant's automobile with the head of appellee was the cause of the thump heard by appellant and of his shattered windshield, it was sufficient to submit to the jury. *Smith v. Pittman,* 396 Pa. 296, 152 A. 2d 470 (1959); *Bashore v. Publix Shirt Corporation,* 370 Pa. 142, 87 A. 2d 468 (1952); *Jenkins v. Poley,* 160 Pa. Superior Ct. 6, 50 A. 2d 32 (1946).

With the fact of such contact established, the evidence as to negligence is clear. Appellant was operating his automobile too fast (20 miles per hour) and

too close to the safety island on which appellee was clearly visible. Appellant admittedly did not concern himself with the presence of anyone in such a position since he did not look or attempt to slacken the speed of his car or change its course until after he had heard a thump and had looked back to see what had caused it. A high degree of care is required of motorists operating their cars at intersections where pedestrians may be expected to be present. *Snyder v. Nehila,* 184 Pa. Superior Ct. 89, 132 A. 2d 355 (1957). It is unlawful to drive in excess of 10 miles per hour at an intersection where a safety zone has been established. Act of April 29, 1959, P. L. 58, §1002, 75 P.S. §1002-(b)(1). The existence of a safety zone is notice to drivers of vehicles that they may not invade the area or come so unreasonably close that life or limb or any person therein will be endangered. *Derricotte v. Ulitsky,* 353 Pa. 309, 45 A. 2d 5 (1946). This case is readily distinguishable from *Johnston v. Dick,* 401 Pa. 637, 165 A. 2d 634 (1960), cited by appellant, and the cases therein cited, in the particular that the evidence in the present case is direct and not circumstantial. It clearly establishes that appellant was traveling onto an intersection at 20 miles per hour unreasonably close to the island and did not see appellee, who was clearly in view. It is not a mere supposition that he did these things, as was the situation in *Johnston v. Dick.*

Furthermore, the admitted and unexplained failure to see appellee as he stood on the safety island is further evidence from which the jury could have concluded that appellant was not so vigilant as he should have been.

Appellee's testimony, confirmed by the medical record of Temple University Hospital, is consistent, that appellee's mind was a blank as to the accident. Therefore, he was entitled to the rebuttable presumption that at the time of the accident he used due care. *Hall-*

*bauer v. Zarfoss,* 191 Pa. Superior Ct. 171, 156 A. 2d 542 (1959). There is no evidence in the record to rebut this presumption.

The issues of this case were properly for the jury and its verdict is sustained by the record.

Judgment affirmed.