Bloom *v.* Hilty (et al., Appellant).

256

[redacted]

Argued April 10, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

[redacted]

*Christ. C. Walthour, Jr.,* with him *Kunkle & Walthour,* for appellant.

*Daniel J. Snyder,* with him *Smith, Best, Williams, Costello & Snyder,* for appellee.

OPINION BY MONTGOMERY, J., June 16, 1967:

George Bloom, plaintiff-appellee, in this action of replevin, seeks to recover 4,100 feet of 3½ inch drill pipe, 1 Rotary Air Hose and Connections, 1 set Bash and Ross 3½ inch slips, 24 piece insert slips, and 4 subs for drill pipe (being pipe and equipment used in drilling operations). His claim is based on a written lease-purchase agreement he entered into with one of

the defendants, Charles D. Hilty, dated May 12, 1964, which provides for a monthly rental of $500 payable June 1, 1964, and each month thereafter for five years with a provision that ". . . upon the payment in full of all monthly payments and amounts shown on this agreement and any schedules which may be attached and incorporated herein, that full right, title, and interest of all items described in the attached schedules shall be vested in the said parties of the second part [Hilty]."

The schedule referred to in the agreement listed among other things the equipment previously mentioned and various quantities of pipe, namely:

"(1)    302 lineal feet of 3½ inch drill pipe at $1.75 per lineal foot

Total    $   529.59

(2)    28 joints of 3½ inch drill pipe at $1.75 per lineal foot (containing 859.2 lineal feet)    Total    1,503.25

(7)    164 joints of 3½ inch drill pipe 30 feet in length, more or less at $1.25 per foot    Total    6,150.00

(9)    Additional drill pipe as per office conference of May 8, 1964 said pipe already received and hereby acknowledged    Total    1,800.00"

Although not included in the schedule attached to the agreement, paragraph (8) of the agreement provided that:

"(8)    The parties [party] of the second part agree to hold in their possession the 2600 feet of 3½" pipe, consisting of the total amount of 3½" drill pipe now in his possession, with straight shoulders (not bottleneck) which CHARLES D. HILTY bought from party of the first part, until this agreement is completed in all its terms, said amount to be held as security."

Prior to May 12, 1964, the date of the agreement, Bloom had delivered to Hilty 2,579 feet of 3½ inch pipe on July 5, 1962, 302 additional feet in September, 1962, and 859.2 feet in November, 1963, making a total of 3,797 feet. Following execution of the agreement only 302 additional feet were delivered, which makes a total of 4,100 (4,099) feet Bloom seeks to recover. Hilty defaulted in his payments from the date the first $500 was due, on which he paid only $100. A judgment against Hilty has been entered in default of an appearance and answer.

Cardwell Gas Drilling Company, the other defendant in whose hands the foregoing items were found, has defended the action and claims title to the property as purchaser of same at a sheriff's sale on a writ of execution issued on a judgment held by E. A. Bowman against Hilty. Cardwell also claims a perfected security interest in 3,300 feet of the same pipe by virtue of an agreement with Hilty dated April 12, 1963. The lower court concluded that Hilty was not the owner of the pipe and equipment at the time of the sheriff's levy on June 17, 1964, title thereto being in Bloom under the terms of the May 12, 1964 agreement between Bloom and Hilty, and for that reason held that there had been no levy made on the pipe and that no title thereto passed to Cardwell by reason of the alleged sale. It concluded also that on April 12, 1963 Hilty was not the owner of the 3,300 feet of pipe offered as collateral when he entered into the agreement with Cardwell on that day and, therefore, their agreement gave no rights in or to the pipe to Cardwell. Judgment was entered for Bloom, and Cardwell appealed.

In order to determine Hilty's interest in the pipe delivered to him by Bloom prior to the aforesaid written agreement between them the lower court, over

the objection of Cardwell, permitted oral testimony to be offered concerning the arrangements under which it had been delivered and of Cardwell's knowledge of them. Cardwell contends that this violated the parol evidence rule since it was offered to vary the terms of its written contract with Hilty. We find no merit in this argument. The rule applies to actions between the parties to an instrument and their representatives or those claiming under them, and not to strangers who are at liberty to contradict the writing to any extent if it is not in accordance with the truth. *Johnson v. Stewart*, 243 Pa. 485, 90 A. 349 (1914); *Carroll v. Godding*, 155 Pa. Superior Ct. 490, 38 A. 2d 720 (1944); *Roesch v. Mark et ux.*, 154 Pa. Superior Ct. 188, 35 A. 2d 774 (1944). Therefore it was proper for Bloom to demonstrate the facts concerning the true ownership of the pipe, and also that Cardwell had been informed that Hilty was not the owner of it.

Reviewing the record in the light most favorable to Bloom, the winner of the judgment, resolving all conflicts therein in his favor and giving him the benefit of every fact and inference of fact pertaining to the issues which reasonably may be deduced therefrom, as we are required to do, *Mack v. Ferebee*, 204 Pa. Superior Ct. 129, 203 A. 2d 350 (1964), the facts appear established that on July 15, 1962, Bloom sold to Hilty 2,579 feet of 3½ inch pipe (presumably the 2,600 feet referred to in paragraph (8) of the written agreement) at $2.25 per lineal foot under an oral agreement whereby Hilty was to pay for it at the rate of ten cents a foot as he drilled and used it, title to remain in Bloom until it was paid for in full. Thereafter he sold him an additional 302 feet in September, 1962, and 859.2 feet in November, 1963, on the same terms under similar oral agreements, retaining title until payment in full was received. Payment was never made in full

since only $2,300 had been paid prior to the 1964 written agreement between them. On April 12, 1963, Cardwell sold Hilty two large pieces of equipment[1] on a written chattel mortgage and as additional security for the payment thereof had Hilty include therein 3,300[2] feet of drill pipe which he had on hand at that time. Cardwell perfected its security interest in the items of property included in this chattel mortgage by duly filing a financing statement in accordance with Sections 9-302 and 9-401 of the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, 12A P.S. §9-302 and §9-401. However, it did so with the knowledge that there was an unpaid claim against the pipe for which reason Hilty disclaimed ownership of it. That knowledge arose out of a conversation between Hilty and the sales representative of Cardwell which was as follows: "He asked about the drill pipe, and I said, 'Mr. Flemming, I don't completely own that drill pipe. I am still buying it.' He said, 'Put it down anyway.'" That was the entire conversation. No mention was made of Bloom or the interest claimed by him. Bloom did not perfect his interest in the property covered by his agreements with Hilty by filing financing statements as required by the aforementioned section of the Uniform Commercial Code, and that is the reason Cardwell claims a prior interest in the 2,881 feet of pipe previously mentioned. However, we deem it unnecessary to resolve that issue in the light of our subsequent decision on the effect of the sheriff's sale.

---

[1] "1 Cardwell Model 200 Double Drum Hoist Serial #K-200-128 w/ 150-96' Structural Mast w/ Racking Board w/ fingers Set For 3½" Drill Pipe.

2 7' 7" Substructure and Working Platform"

[2] This was obviously a poor estimate since Hilty had no pipe of his own and had procured from Bloom up to that date only 2,881 feet.

## Sheriff's Sale

Under Section 9-102 the Code provisions relating to secured transactions apply to any transaction (regardless of its form) which is intended to create a security interest and particularly to chattel mortgages, conditional sales or other lien or title retention contracts. It is, therefore, applicable to the oral and written lease-purchase agreements between Bloom and Hilty, and also to the written agreement in the form of a chattel mortgage between Hilty and Cardwell. Under Section 9-110 equipment such as we have under consideration is included. Under Section 9-201 security instruments are effective without perfection, perfection being for the purpose of securing priority among holders thereof, subsequent purchasers, etc. *Casterline v. General Motors Acceptance Corporation,* 195 Pa. Superior Ct. 344, 171 A. 2d 813 (1961). Therefore, the written agreement between Bloom and Hilty, and the written agreement between Cardwell and Hilty are effective. We need not decide the enforceability under Section 9-203 of the oral agreements between Bloom and Hilty. Thus the property in the hands of Hilty at the time of the levy on Bowman's writ of execution against Hilty was in part subject to the perfected security interest of Cardwell and in part subject to the unperfected security interest of Bloom. As to the latter, Bowman's levy gave him priority over it since Bowman was without notice of it. Section 9-301(b). However, Bloom and bidders at the sale would be held to have had knowledge of Cardwell's perfected interest. Since Section 9-202 makes it immaterial whether title to the goods is in the creditor or the debtor, under the aforestated circumstances Bowman, as judgment creditor, could properly levy upon all of the goods in question as being in the hands of the debtor Hilty regardless of his title to them. Sections 9-501 and 9-504.

Therefore, the lower court was in error in basing its decision entirely on Hilty's lack of title to the goods.

There is, however, another point of the case which must be examined, since Bloom contends no levy was made on the pipe and other fittings. That is the determination of what in fact was included in the levy. The sheriff's return of levy and sale listed the following: "K 200 Cardwell Gas Drilling Equipment (Complete) Autocar (Cummins Diesel) Truck & Trailer Lic. No. ZZ889R . . . And all other Personal Property of Defendant. Seized and taken in execution as the property of Charles D. Hilty at the suit of—E. A. Bowman". All of the property under consideration was on the Rockwell Farm in Westmoreland County where Hilty was conducting his drilling operations at the time of the levy and sale. The record clearly shows that at the time of the levy and also at the time of the sale, Hilty was operating the equipment, with part of the pipe in the hole he was drilling, one piece in the drilling rig, and the remainder close by on a rack ready for use. Obviously, that is the reason the deputy sheriff making the levy placed the word "Complete" following the description of the drilling equipment, and therefore did not itemize the pipe and fittings separately. However, this is of no moment since it is not necessary for a sheriff to itemize every particular item on which he has levied. *Wilson, Sieger & Co.'s Appeal,* 13 Pa. 426 (1850); *Commonwealth v. Weglein,* 147 Pa. Superior Ct. 257, 24 A. 2d 633 (1942). In *Weglein* there was excluded from the levy, which was on the business of a pawnbroker, the pledged articles which were definitely the property of strangers to the levy. In the present case, as we have pointed out, the property levied on was the property of Hilty subject to the security interest of others. Therefore the sheriff, in levying on the complete operation, including all of

the equipment in sight being used by Hilty, was performing his official duties by including all other personal property of the defendant in addition to the listed items. There is a presumption from the return that the levy was rightly made on such goods only as were subject to levy and in this case there is no testimony on which the return could be set aside as erroneous or fraudulent. We do not consider the discussion between Hilty and George L. Hays, representing Cardwell, on July 15, 1964, the day before the sale, as such evidence. The levy was made as the return shows. The property was sold as it was shown on the levy and Cardwell took possession of all of it including the pipe and fittings immediately following the sale. As we read the opinion of the lower court, the trial judge made no finding that there was no actual levy made. His finding was to the effect that no levy could be made because Hilty was not the owner of the property in question. We have previously pointed out that this was error.

Having held that the levy and sale included the pipe, one further question remains and that is whether its purchase by Cardwell was subject to any knowledge on its part that Bloom had a security interest in any part of the goods which it should recognize. This record is devoid of any evidence to show knowledge on the part of Cardwell concerning the 1964 agreement between Bloom and Hilty. It is also devoid of any evidence showing knowledge by Cardwell of the oral agreements between said parties hereinbefore referred to. The only thing that appears is knowledge on the part of Cardwell's representative at the time its written agreement was entered into with Hilty that 2,881 feet of 3½ inch pipe (erroneously described as 3,300 feet) was not fully paid for by Hilty at that time and for that reason was not owned by him. However, noth-

ing was brought to the attention of Cardwell at the time of the sheriff's levy that the same condition existed; nor did Bloom appear and advise purchasers or prospective bidders at the sale of his alleged outstanding interest, whereas the bidders were advised of Cardwell's perfected security interest in part of the equipment being sold. Furthermore, the statement by Hilty that he was not the owner of the equipment at the time he pledged it with Cardwell was, as we have previously described, an erroneous conclusion drawn by him. At that time, under the Code he was the owner subject to whatever claims might be enforceable against him or the equipment for any unpaid balances thereon. In the same manner he was the owner of the equipment subject to claims against it at the time of the sheriff's sale. As the owner of same under his lease-purchase agreements he was privileged to use it as his own subject to the outstanding security interests therein. Section 9-205. Prior to the Code the law was the same. *Rodi Boat Company v. Provident Tradesmens Bank & Trust Company,* 236 Fed. Supp. 935 (E.D. Pa. 1964); *Packard Motor Car Co. v. Mazer,* 77 Pa. Superior Ct. 348 (1921). It was subject to attachment and sale by judgment creditors, Section 9-501, subject to prefected security interests therein. Furthermore, it would not be unreasonable for Cardwell to assume as to the 2,881 feet of pipe placed in the chattel mortgage that the balance due thereon had been paid in the interval of the year between its contract with Hilty and the date of the sheriff's sale, in view of the fact that no mention was made of any unpaid balances thereon at the dates of the levy and sale. Had Cardwell had access to the 1964 agreement between Bloom and Hilty he would have seen there were no unpaid claims asserted therein to the pipe, etc., delivered prior to the agreement and that the 2,600 feet of pipe included in para-

graph (8) was referred to as "bought" and that it was pledged as collateral security for the new rentals provided for in the agreement. We must therefore conclude that Cardwell was not chargeable with any knowledge of outstanding claims by Bloom against any of the equipment which it bought from the sheriff.

It might seem unjust and unreasonable for Cardwell to acquire the additional equipment other than that which it had sold to Hilty at a sheriff's sale for a bid of one ($1.00) dollar.[3] However, this is not unusual because many sales are completed on the basis of a bid for costs when prior claims may exceed the value of the goods being sold. In the present case Cardwell's claim was substantial and the security it held for its claim may have been depreciated considerably by use over the period of the year Hilty was using it. In addition, it is noted that another creditor filed a claim against any proceeds realized from the sale. Thomas L. Shelhamer, through his attorney, notifed the sheriff of a claim against Mr. Hilty in the sum of $1,578.50 for wages which had accrued to him. He was aware of the sale but did not see fit to become a bidder in order to protect his claim. This is not a proceeding to set aside the sale, but one to recover property which it is alleged had not been sold. The sale was properly advertised and Bloom had ample opportunity to attempt the recovery of his property from the time of the levy thereon to the date of sale, or at least to have notified the sheriff and prospective bidders of his claim thereto. He took no such action, which was a dereliction on his part if he possessed the claims which he now asserts; and he was also derelict in his failure to

---

[3] Cardwell offered to show that the actual consideration paid the sheriff was $1,382.33, but was prevented from doing so when the trial judge sustained an objection to the evidence. We fail to see the reason for this action on the part of the trial judge.

take steps to perfect any security interests that he may have had in the property which he now is seeking to replevy.

On this record the defendant Cardwell Gas Drilling Company is entitled to judgment notwithstanding the decision of the lower court. The judgment entered for George Bloom is reversed and the Prothonotary is directed to enter judgment for Cardwell Gas Drilling Company.