**In the Matter of Diane L. GIBSON, Debtor.**

**Diane L. GIBSON, Plaintiff,**

**v.**

**Russell W. STEGER and Robert A. Rylowicz, d/b/a Steger Rylowicz Agency, Defendants.**

**Bankruptcy No. 80 B 08977.**

U. S. Bankruptcy Court,
N. D. Illinois, E. D.

Oct. 6, 1981.

**564**

Ceil M. Reinglass, Chicago, Ill., for debtor.

Andrew W. Levenfeld and Morris Topol, Chicago, Ill., for Steger/Rylowicz Agency.

### OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause arose from the complaint of the debtor, Diane L. Gibson, to obtain $4,192.94 in insurance commission retained by Steger/Rylowicz Agency (hereinafter the "General Agent"). Passing for the moment the question of whether Gibson was an employee of the General Agent or an independent contractor, the essential facts are not in dispute.

Steger/Rylowicz Agency was a General Agent to New England Mutual Life Insurance Company (hereinafter "New England Mutual"). Gibson was described in her employment contract as an "Agent", but in common parlance she was an insurance salesperson who earned commissions on the life insurance which she sold. At the time that the petition was filed, the General Agent held $4,192.94 in commissions earned by Gibson, according to the contention of Gibson.

The General Agent, on the other hand, contended that it did not hold any money due to Gibson because Section 2(d) of the employment contract provided:

"(d) *Right of Offset*

The General Agent . . . may at any time offset against any compensation payable to the Agent . . . any indebtedness from the Agent to the Company or to the General Agent."

It is not clear from the pleadings and the briefs whether the General Agent has isolated into an escrow account the unpaid commissions earned by Gibson or whether it has offset those earnings against the unpaid advances which the General Agent previously had made to Gibson and had transferred the funds into its general account. No reference was made at any point in the proceedings to the fact that as a matter of first impression it would appear that United of America Bank, which is not a party, would have a stronger claim to the funds than would the General Agent, because the commissions in question previously had been assigned to the Bank, to which the assignment the General Agent had been a party.

It appears that prior to September 15, 1978, the General Agent had lent or advanced to Gibson against her future earnings the sum of $10,269.83. A seemingly curious method of repayment was developed under which the General Agent borrowed $10,300 from United of America Bank and received the proceeds of the loan. Gibson guaranteed repayment of that note and to secure her guaranty assigned 100% of all of her first and renewal commissions to the Bank. There still remains owing to the Bank on that loan the sum of $8,079.42.

On February 26, 1979, Gibson owed the General Agent the sum of $4,000 and on that date executed an assignment of all future commissions to the General Agent.

■ Because of the manner in which the issue was raised, the only decision which this Court has to make is whether the General Agent or Gibson has a better claim

against the $4,192.94 in insurance commissions earned by Gibson and not paid to her. This Court does not have to decide what is the legal effect of assigning the same *res* a second time and what the rights of United of America Bank, the first assignee, might be; the Bank has not been made a party to this adversary proceeding. In the broad interest of justice, however, this Court will not allow either of the parties to this proceeding to exercise further dominion over the $4,192.94 in earned commissions without providing the Bank with a copy of this Opinion and Order and permitting the Bank fifteen days after receipt of the Opinion and Order in which to assert before this Court any rights which it may claim to have in those funds.

Two contentions are made by Gibson to support her theory attacking the assignment to the General Agent:

1. The assignment does not create a security interest under § 9–104(g) of the Uniform Commercial Code (1979 Ill.Rev.Stat. Ch. 26, § 9–104(g); and

2. An assignment of commissions is limited to 15% of the Commissions earned (1979 Ill.Rev.Stat. Ch. 48, § 39.4).

It never ceases to amaze this Court that there are so many lawyers who do not recognize that the main thrust of Article 9 of the Uniform Commercial Code is the protection of third persons against undisclosed proprietary or security interests in personal property. § 9–201 provides, in part:

"Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties..."

The fact that the assignment of commissions by Gibson to the General Agent was not recorded has no bearing on the rights of the parties as to each other. It might affect their rights or liabilities to third persons, including creditors, bona fide purchasers, and trustees in bankruptcy, but as between themselves it is immaterial.[1]

The second contention of Gibson is valid only if Gibson was an employee. The informal name of the Illinois statute upon which Gibson relies is *"Assignment of Wages due Employees."* Its official designation is:

"An Act to promote the welfare of wage-earners by regulating the assignment of wages, and prescribing a penalty for the violation thereof." (1979 Ill.Rev. Stat. Ch. 48, §§ 39.1–39.11).

Although limited to wages at the time of its enactment, the statute has been amended to cover other forms of compensation and presently provides in part,

§ 39.4. *Maximum amount of compensation subject to collection by assignee.*

"The maximum wages, salary, commissions, bonuses and periodic payments pursuant to a retirement or pension plan that may be collected by an assignee for any work week shall not exceed the lesser of (1) 15% of such gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed thirty times the Federal Minimum Hourly Wage..."

The words of this statute and similar statutes in other jurisdictions, the respective legislative histories of all of them, and the practically uniform Court construction of the statutes establishes that they are designed to provide protection to working persons who are employees and are not independent contractors. It would be a waste of time to expand upon the legislative policy behind the distinction other than to suggest that employees generally are deemed to need a degree of protection, whereas independent contractors are not.[2]

The issue thus becomes one of determining whether Gibson was an employee of the General Agent or was an independent contractor. Usually when that issue arises

---

1. U.C.C. § 9–201, comment; *Bloom v. Hilty,* 210 Pa.Super. 255, 232 A.2d 26 (1967); *In re California Pump & Mfg. Co., Inc.,* 588 F.2d 717 (9th Cir. 1978).

2. *See generally* Fortas, *Wage Assignments in Chicago—State Street Furniture Co. v. Armour & Co.,* 42 Yale L.J. 526 (1933); Note, 30 Ill.L. Rev. 759 (1936); 15 Chicago-Kent L.Rev. 46 (1936).

there is no written employment contract in existence and ancillary factors such as eligibility to participate in employment benefit programs are analyzed as indicia of an employment relationship. Primary emphasis usually is placed on whether or not the alleged employer deducts from the worker's gross compensation such items as state or federal income taxes and Social Security payments. There was no evidence introduced respecting any of those standard indicators, but there was submitted the written "Incentive Career Contract", which sets forth the basic business relationship among New England Mutual, the General Agent and Gibson, which provided, in part, as follows:

> "It is agreed that the Agent [Gibson] is an independent contractor and nothing in this Contract shall be construed to create the relationship of employer and employee."

■ The introduction of that contract constitutes prima facie evidence that Gibson was an independent contractor and not an employee. Gibson did nothing to refute that evidence, and so it stands unrebutted. As an independent contractor there are no protective laws respecting the percentages of compensation which may be assigned to creditors; and, consequently, the assignments of 100% of future commissions do not affront any established public policy or enacted law.

IT IS ORDERED THAT the General Agent shall:

(1) make a copy of this Opinion and Order available to the Bank,

(2) continue to hold in escrow the funds previously earned by Gibson as commissions,

(3) unless notified within 15 days after delivery of the Opinion and Order to the Bank that the Bank claims an interest in the commissions being held in escrow, transfer such funds into its general account, and

(4) seek further instructions from this Court if the Bank does claim an interest in the funds.